## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MARY JANE SWEET SPOT, LLC and
ASHLEY MCCOY,

               Plaintiff,

            v.

CITY OF BLUE ISLAND;
FRED BILOTTO;
THOMAS WOGAN; and
RAFEANN CANTELO-ZYLMAN

               Defendants.

Case No. 1:22-cv-06273

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

In this case brought under 42 U.S.C. § 1983, Plaintiff Ashley McCoy ("Plaintiff") and her business, Mary Jane Sweet Spot, LLC, (collectively, "Plaintiffs"), sue the City of Blue Island ("the City") and City officials Fred Bilotto, Raeann Cantelo-Zylman, and Thomas Wogan ("the individual defendants"), for their actions in relation to the denial of Plaintiff's business license.[1] *See* [17]. Plaintiffs bring five

---

[1] Defendant Fred Bilotto is the mayor of the City of Blue Island. [17] ¶ 6. Defendant Raeann Cantelo-Zylman is a City Council member and the City Clerk of Blue Island. *Id.* ¶ 7. Defendant Thomas Wogan is the City Administrator for the City of Blue Island. *Id.* ¶ 8. Plaintiff sues these City officials under 18 U.S.C. § 1983 in their individual and official capacities seeking monetary damages. Plaintiff cannot obtain monetary relief from defendants in their official capacities; such relief is barred by the Eleventh Amendment and does not fall within the *Ex Parte* Young exception. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that state officials in their official capacities are not "persons" under § 1983). To the extent that Plaintiffs seek monetary damages from Defendants Bilotto, Cantelo-Zylman, and Wogan acting in their official capacities, those claims are dismissed as barred under the Eleventh Amendment. *See Brown v. Budz*, 398 F.3d 904, 917 (7th Cir. 2005). But these individual defendants remain subject to suit for monetary damages in their individual capacities. *Id.*

claims under 42 U.S.C. § 1983 for violation of her rights under the Due Process Clause (Count I), the Equal Protection Clause (Counts II and III), and conspiracy to violate civil rights (Counts IV and V). Plaintiff also alleges a race discrimination claim under 42 U.S.C. § 1981 (Count VI), and state law claims for tortious interference with business (Count VII), conspiracy (Count VIII), and liability under *respondeat superior* (Count IX).

The City and Defendants Bilotto, Cantelo-Zylman, and Wogan move to dismiss Plaintiffs' First Amended Complaint ("the Complaint") in its entirety under Federal Civil Procedure 12(b)(6). For the reasons set forth below, this Court grants in part, and denies in part, Defendants' motion.

## I.    Factual Allegations[2]

Plaintiff Ashley Mary Jane McCoy is an African American woman and the owner of Mary Jane Sweet Spot, LLC. [17] ¶ 4. In September 2021, Plaintiff applied for a business license for Mary Jane Sweet Spot in the City of Blue Island. *Id.* ¶¶ 4, 11. On the application, Plaintiff described Mary Jane Sweet Spot, LLC, as a "small bakery" with "theme days."[3] After submitting her application, Plaintiff completed all inspections required by City Code. *Id.* ¶ 15.

---

[2] The Court draws the facts from Plaintiffs' First Amended Complaint, [17], and the exhibits attached to it, which it takes as true for purposes of the motion to dismiss. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (citing *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)).

[3] Plaintiff attaches the business license application to her Complaint as Exhibit A. [17-1]. The Complaint alleges that the application "identified that it was to operate an evening bakery at the business site with 'theme days.'" [17] ¶ 12. But the business license application itself only describes the bakery as a "small bakery with 'theme days,'" providing the example of "Thurs—non baking class." *See* [17-1]. The application also states, "No Alcohol pending liquor license App." *Id.*

On October 15, 2021, Plaintiff received certifications of compliance from the Blue Island Fire Department and Department of Buildings and Health Department for Mary Jane Sweet Spot, and a final approval inspection letter from the City. *Id.* ¶ 15–16, [17-2]. That same day, Robert Vasilenko of the City's business licensing department notified Plaintiff via phone that the City approved her business license, and that she could pay for and pick up the license the following day. [17] ¶ 18. Plaintiff was out of town but told Vasilenko that she would pay the required fees and obtain the license upon her return. *Id.*

On October 20, 2021, before obtaining the business license, Plaintiff held a private pre-opening gathering of family and friends at Mary Jane Sweet Spot, that is, until the police showed up. *See id.* ¶¶ 20–21. The police report indicates that on that date, Defendant Thomas Wogan (the City's administrator) instructed the City's Chief of Police Geoffrey Farr and Detective Jason Slattery to conduct a premises check at the business. *Id.* ¶ 19.

When law enforcement arrived, they accused Plaintiff of serving alcohol[4] and ordered she immediately terminate the event. *Id.* ¶ 20. Plaintiff complied, but explained to the officers that she was having a private gathering of family and friends before the scheduled opening of the business to the public. *Id.* ¶ 21. The next day, Plaintiff attempted to pick up the business license. *Id.* ¶ 22. When she did, a police

---

[4] Plaintiff denies that there was evidence that alcohol was being served or was present during the event. [17] ¶ 20.

detective informed her that the City would not issue her license because her application was under investigation. *Id.*

From October 21, 2021 through November 21, 2021, Plaintiff called the Mayor's office several times to request a personal meeting with Mayor Bilotto to discuss the status of her license and the discrimination she believed she had been facing. *Id.* ¶ 23. Bilotto avoided Plaintiff's calls and declined her requests. *Id.* ¶ 24.

On October 25, 2021, the City issued Plaintiff three tickets relating to the pre-opening gathering, for violating: (1) City Ordinance 86-58: failure to obtain a business license; (2) City Ordinance 09-048: failure to obtain a certificate of occupancy; and (3) City Ordinance 99-298: liquor license required. *Id.* ¶ 26.

On November 12, 2021, Defendants formally denied Plaintiff's business license in a letter, which states that Plaintiff's application was denied for "misinformation about the type of business" she intended to run. *Id.* ¶ 27.[5] The letter also states that Plaintiff's application was denied because "notwithstanding the fact that you were issued citations by the officers for violations of the City Code on October 20th, you

---

[5] The letter states: "Your business license application is <u>denied</u> for reasons which include…you indicate in the application that the business sought to be licensed as a "small bakery with theme days." One of the theme days noted in the application was a non-baking class on Thursdays. Yet, on October 20, 2021, without a license to operate a business, a liquor license, or an occupancy certificate, the Business hosted an event which featured comedians, "infused treats" and charged a cover of $10 for entry. You informed the police that this event was a baby shower for a family member. The Business also advertised for a party taking place on October 31, 2021 which again featured "infused treats" along with hookah smoking, a DJ, and food. The event was advertised as a "Bring Your Own Booze" event. At no time has the Business been licensed to operate by the City in any capacity. Furthermore, you have applied for a license to operate as a small bakery, when in fact, the Business is clearly intended to be an event space for events unrelated to baking and featuring entertainment, alcohol, hookah smoking, and the suggestion of marijuana. Your business license application, therefore, contains misinformation about the type of business you intend to run and must be denied on that ground alone." [17-3].

4

continued to advertise for an October 31 event until you were ordered by City officials to cancel it." [17-3].

After receiving the denial letter, Plaintiff repeatedly requested to pay fines or otherwise remedy the situation so that she could obtain her business license, but her requests were rejected. *Id.* ¶¶ 29–30. Plaintiff then appealed the denial of her license, but a City administrative hearing officer denied the appeal on January 26, 2022. *Id.* ¶ 31. The hearing officer determined that "Plaintiff's private function on October 20, 2021, and her advertisement of a planned Halloween event indicated that she misstated the purpose of her business on her application for a bakery." *Id.* ¶ 34.[6]

Plaintiffs now sue the Defendants for damages in federal court. The Complaint alleges that Defendant Mayor Bilotto and other employees of Blue Island ordered the denial of Plaintiffs business license. *Id.* ¶ 40. It further alleges that after assuming the position as mayor, "Fred Bilotto and the trustees and employees of the City" intentionally began a "practice of targeting African American owned businesses through the issuance of tickets, fines, police abuse and harassment and the denial of business licenses in order to implement a policy of driving out African American owned businesses from the City of Blue Island." *Id.* ¶ 39. For example, the Complaint alleges that the City is "not in the practice of sending police officers to other businesses hosting private gatherings." *Id.* ¶ 47. Rather, the treatment of Plaintiffs was to "target African American businesses," including Plaintiff's business, and to

---

[6] Plaintiff subsequently petitioned the Circuit Court of Cook County for administrative review; the court ruled for Defendants, stating that Plaintiff failed to exhaust her administrative remedies and the court lacked subject matter jurisdiction. *Id.* ¶ 36.

"discourage the operation of African American business within the City of Blue Island." *Id.* ¶ 48.

For these allegations, Plaintiffs bring federal claims under 42 U.S.C. § 1983 for: (1) substantive due process violations under the Fourteenth Amendment (Count I); (2) equal protection violations as a suspect class under the Fourteenth Amendment (Count II); (3) equal protection violations as a "class-of-one" under the Fourteenth Amendment (Count III); (4) civil conspiracy to violate Plaintiffs' due process rights (Count IV); and (5) civil conspiracy to violate Plaintiffs' equal protection rights (Count V). Plaintiffs also bring a federal claim under 42 U.S.C. § 1981 for discrimination in the formation and execution of a contract (Count VI) and state law claims for tortious interference with business (Count VII), civil conspiracy under Illinois state law (Count VIII); and *respondeat superior* (Count IX).

For the reasons set forth in detail below, the Court grants in part, and denies in part, Defendants' motion.

## II.  Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged

misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

In analyzing motions to dismiss, the Court construes the complaint in the light most favorable to Plaintiff, accepts all well-pled allegations as true, and draws all reasonable inferences in Plaintiff's favor. *See Iqbal*, 556 U.S. at 678; *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 584 (7th Cir. 2021).

## III. Discussion

### A. Threshold Matter: Liability of the City Under Section 1983

The Court first addresses whether the Complaint's allegations remain sufficient to subject the City to liability under § 1983. As a municipality, the City of Blue Island constitutes a "person" for purposes of 42 U.S.C. § 1983, and thus may be liable for its own violations of federal law. *Monell v. Dept. of Social Svcs.*, 436 U.S. 658, 690–91 (1978). But since municipalities do not face *respondeat superior* liability under § 1983, a plaintiff must allege conduct that is attributable to the municipality itself. *See Flores v. City of South Bend*, 997 F.3d 725, 731 (7th Cir. 2021); *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997). In other words, a plaintiff must show that the constitutional violation was caused by a governmental "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021). *Monell* liability only attaches if the policy, custom, practice, or decision, was "the moving force behind the federal-rights violation." *Gonzalez v. McHenry Cty.*, 40 F.4th 824, 829 (7th Cir. 2022).

The Seventh Circuit has recognized three types of actions that can support municipal liability under § 1983: "(1) an express policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by an agent with final policymaking authority." *Gonzalez,* 40 F.4th at 829 (citing *Dean v. Wexford Health Sources, Inc.,* 18 F.4th 214, 235 (7th Cir. 2021)).  The Complaint does not allege an express policy; Plaintiffs appear to pursue liability against the City for its § 1983 claims under the second and third theories of municipal action.  The Court addresses each in turn.

Defendants argue that Plaintiffs fail to plausibly state a widespread custom or practice because Plaintiffs only allege the denial of the business license application and the appearance of police officers at the pre-opening gathering.  [21] at 14.  The Court agrees.

To proceed on a "widespread practice" theory, Plaintiffs must allege facts that permit the reasonable inference that the practice is, in fact, "widespread and the specific violations complained of were not isolated incidents." *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023) (citing *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017)).  Allegations of "a few sporadic examples of an improper behavior" will not suffice. *Thomas,* 74 F.4th at 524 (concluding that allegations of two isolated incidents failed to plausibly allege widespread practice) (citing *Flores*, 997 F.3d at 733).  Defendants argue, and the Court agrees, that since Plaintiffs only complain of two isolated incidents—denying the business license and sending police to the business—they cannot maintain *Monell* claims against the City based upon a widespread practice theory.

8

This leaves Plaintiffs with only the third avenue of establishing municipal liability, which requires Plaintiffs to show that their constitutional injuries were caused by an act or decision of a person with final policymaking authority. *See Gonzalez*, 40 F.4th at 829. A final policymaker is one "whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694.

Whether a person constitutes a final policymaker under § 1983 is determined by state or local law. *Waters v. City of Chicago*, 580 F.3d 575, 581 (7th Cir. 2009); *Kujawski v. Bd. of Comm'rs*, 183 F.3d 734, 738 (7th Cir. 2004) ("A person's status as a final maker under § 1983 is a question of state or local law."). Significantly, the relevant inquiry is not "whether an official is a policymaker on all matters for the municipality, but whether he is a policymaker 'in a particular area, or on a particular issue.'" *Valentino v. Vill of S. Chi. Heights*, 575 F.3d 664, 676 (7th Cir. 2009) (quoting *Kujawski*, 183 F.3d at 738). To make this determination, courts look to factors such as: "(1) whether the official is constrained by policies of other officials or legislative bodies; (2) whether the official's decision on the issue in question is subject to meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority." *Valentino*, 575 F.3d at 676.

As final policymakers, the Complaint names two contenders: Raenn Cantelo-Zylman (City Council member and Clerk), and Mayor Fred Bilotto.[7]

---

[7] The Complaint does not allege that Defendant Thomas Wogan, the City Administrator, has final policymaking authority. *See* [17] ¶ 8.

Regarding Cantelo-Zylman, the Complaint alleges that she had policymaking authority because the "function of a member of City Council is to legislate and to oversee the general operations of government and to have final policymaking authority." [17] ¶ 7. But the Complaint makes no specific allegations regarding any actions taken or decisions made by Cantelo-Zylman.[8] And to plausibly allege a claim, Plaintiffs must allege a causal connection between an act or decision by the alleged final policymaker, and the constitutional harm. *See Bohanon v. City of Indianapolis*, 46 F.4th 669, 676 (7th Cir. 2022) (explaining that the "rigorous causation standard" applicable to *Monell* claims requires the plaintiff "to show a direct causal link between the challenged municipal action and the violation of his constitutional rights") (internal citations and quotations omitted). Accordingly, Plaintiffs' *Monell* claims cannot proceed based upon Cantelo-Zylman's role as a final policymaker.

This leaves Bilotto. In a general manner, the Complaint alleges that Mayor Bilotto was "the president of the board of trustees" and the "function of a trustee is to legislate and oversee the general operations of government and to have final policymaking authority." [17] ¶ 6. This conclusory statement falls short. As explained above, municipality liability based on the actions of an alleged "final

---

[8] Individual liability under § 1983 requires "personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017); *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). Since Plaintiffs will have the opportunity to replead their claims, and "in the interest of encouraging both parties to put their best foot forward sooner than later," *see Dyson v. City of Calumet City*, 306 F.Supp.3d 1028, 1047 (N.D. Ill. 2018), the Court notes that no facts in the Complaint suggest that Defendant Cantelo-Zylman caused any of the alleged constitutional violations. Cantelo-Zylman's name is only mentioned in ¶ 7 of the Complaint which introduces the parties and is not mentioned again. To state a claim for individual liability against Cantelo-Zylman, Plaintiffs will need to plausibly allege facts from which this Court can reasonably infer a "causal connection between (1) the sued officials and (2) the alleged misconduct." *Colbert,* 851 F.3d at 657.

policymaker" is not evaluated in the abstract; what matters is whether the individual has final policymaking authority with respect to the action or decision that violated Plaintiffs' constitutional rights. *See Valentino*, 575 F.3d at 676. Here, the Complaint alleges two primary actions or decisions upon which *Monell* liability might be predicated.

First, the decision to deny Plaintiffs' business license. The Complaint alleges that Bilotto ordered the license denial, thus establishing a nexus between the alleged final policymaker and the decision at issue. [17] ¶ 40. As Defendants point out, however, the City's Municipal Code provides a meaningful review process by the City Council for any "person aggrieved by the decision of the Mayor" relating to the denial, suspension, or revocation of licenses, and here, Plaintiffs acknowledge that they took advantage of this appeal process. *See* [17] ¶ 31; Blue Island, Ill. Code of Ordinances, Title VI, § 110.50; Blue Island, Illinois Code of Ordinances.[9] As such, Bilotto's decisions regarding licensing remain "subject to review" by a higher authority, and he cannot be a "final policymaker for purposes of municipal § 1983 liability." *See Palka v. City of Chicago*, 662 F.3d 428, 43 (7th Cir. 2011); *see also Vodak v. City of Chi.*, 639 F.3d 738, 748 (7th Cir. 2011) (noting that the question is whether the "decisionmaker—was at the apex of authority for the action in question"). The Complaint contains no other allegations from which this Court can plausibly infer that Bilotto possessed final policymaking authority with respect to the decision to deny Plaintiffs' business license.

---

[9] The Code is available at http://codelibrary.amlegal.com/codes/blueisland/latest/blue_il/0-0-0-1.

The second relevant action is the ordering of police to Plaintiffs' pre-opening gathering. The Complaint alleges that the City's administrator, Thomas Wogan, contacted the Chief of Police, Geoffrey Farr, and Detective Jason Slattery, and instructed them to conduct a premises check of Plaintiffs' business. [17] ¶ 19. The Complaint does not, however, make any allegations suggesting that Bilotto was involved in the decision to send law enforcement to the business at all.

Moreover, under Blue Island's Municipal Code, the Chief of Police "shall be responsible for the performance of the Police Department in all of its operations and functions" and "all officers and members and other personnel . . . serve subject to *his or her* orders." Blue Island, Ill. Code of Ord., Title III, § 33.040 (emphasis added). Thus, by City Code, the Blue Island Chief of Police has complete control over the affairs of his department, and the Chief of Police does not work for the Mayor. Construing every possible reasonable inference in Plaintiffs' favor, this Court simply cannot infer that Mayor Bilotto had final policymaking authority with respect to the decision to dispatch law enforcement to Plaintiffs' pre-opening gathering.

Because Plaintiffs have failed to establish *Monell* liability against the City under any theory, the Court dismisses Plaintiffs' § 1983 claims against the City. Therefore, the Court will only assess the sufficiency of the allegations in Counts I–V to state a claim against Defendants Bilotto, Cantelo-Zylman, and Wogan.

## B. Count I: Substantive Due Process

The Fourteenth Amendment bars any State from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

Substantive due process provides protections against certain government actions "regardless of the fairness of the procedures used to implement them." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 839 (1998) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). The "touchstone of due process is protection of the individual against arbitrary action of government." *Lewis*, 523 U.S. at 845.

Here, Plaintiffs allege that they had a constitutionally protected property interest in the business license for Mary Jane Sweet Spot and Defendants violated their substantive due process rights either by refusing it to issue the business license or by ordering law enforcement to conduct the premises check during Plaintiff's pre-opening gathering. [24] at 5–6. Defendants counter that Plaintiffs have no such property interest in the business license, only a "unilateral expectation" of a property interest. [21] at 4.

### A. Property Interest

To establish a due process violation, the plaintiffs must first establish a protected liberty or property interest with which the government has interfered. *See FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 592 (7th Cir. 2021). Property interests for due process purposes are "defined by existing rules or understandings that stem from an independent source such as state law." *Bell v. Cty. Of Cntry. Club Hills*, 841 F.3d 713, 717 (7th Cir. 2016) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). For a property interest to be constitutionally protected, plaintiffs must show that they have "a legitimate claim of entitlement" rather than a "unilateral expectation to it." *Bell*, 841 F.3d at 717 (citing *Roth*, 408 U.S. at 577).

The Supreme Court has held that a benefit is not a protected entitlement under the Due Process Clause "if government officials may grant or deny it in their discretion." *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005). In some cases, however, a government license may be a form of property entitlement. *FKFJ, Inc.*, 11 F.4th at 592. Whether a license or permit constitutes a protected entitlement turns on whether the "municipal ordinance provides substantive criteria which, if met, dictate the issuance of the license or permit." *New Burnham Prairie Homes, Inc v. Vill. of Burnham*, 910 F.2d 1474, 1480 (7th Cir. 1990) (quoting *Polenz v. Parrott*, 883 F.2d 551, 556 (7th Cir. 1989)).

For example, in *FKFJ, Inc.,* the court held that a plaintiff had only a unilateral expectation to a business license renewal where the Village's Code granted government officials the discretion to renew licenses by providing that the licenses "may" be renewed upon proper application. 11 F.4th at 592. The court explained that the code "gives the clerk authority to approve applications for renewals, rather than mandating that the clerk approve and execute renewals when the requisite criteria is met." *Id.*

Similarly, in *Dyson v. City of Calumet County*, the court concluded that a plaintiff only had a unilateral expectation to a special use permit where the city council ultimately had "discretion in granting such permits," and likewise, had not sufficiently pled a property interest in a business license where the plaintiff failed to identify "any ordinance that dictates when and how a business license may be issued." 306 F.Supp.3d at 1041; *see also Bell,* 841 F.3d at 719–720 (holding that plaintiff had

14

no property interest in a rebate where City retained discretion to reject rebate applications from homeowners); *Scott v. Vill. of Kewaskum*, 786 F.2d 339, 340 (7th Cir. 1986) (Wisconsin law) (finding no property interest where statute did not provide substantive criteria under which government "must" issue a liquor license).

Here, the denial letter annexed to the Complaint cites Title XI, § 110.22(B) of Blue Island's Code of Ordinances, which provides:

> If, after due consideration of the information contained within the application and related investigative and inspection reports and certificates of compliance, the City Clerk or his or her designee determines that matters concerning the application are unsatisfactory, he or she shall disapprove the application, including the reasons therefor.

[17-3].

This Ordinance provision lodges discretion in the City Clerk to disapprove applications he or she deems unsatisfactory for any reason. Plaintiffs cite no provision mandating the issuance of the license after certain steps are completed or objective criteria are met. Accordingly, as in *FTFS, Inc.* and *Dyson*, Plaintiffs have no protected property interest in the business license.

Plaintiffs argue that they have a constitutionally protected interest in the business license they sought because the license could not be taken away without cause. For this proposition, Plaintiffs direct the Court to *Club Misty v. Laski*, 208 F.3d 615, 619 (7th Cir. 2000). In *Club Misty,* the Seventh Circuit held that the plaintiffs had a property interest in the renewal of their Illinois liquor license because it was "revocable during its term only for cause" and "renewable as a matter of right

15

when the term expires unless the licensee is unqualified or his premises unsuitable." *Id.* at 618 (citing *Reed v. Village of Shorewood*, 704 F.2d 943, 949 (7th Cir. 1983), *overruled on other grounds by Brunson v. Murray*, 843 F.3d 698 (7th Cir. 2016)).

But *Club Misty* and *Reed* are inapposite. First, those cases concerned the denied renewal of previously issued liquor licenses; and the property interest articulated in *Club Misty* and *Reed* only attached "once [the license] is obtained" and "extends to the license's annual renewal." *See Pro's Sports Bar & Grill, Inc. v. City of Ctry. Club Hills*, 589 F.3d at 870 (explaining that "*once granted*, an Illinois liquor license is a form of property within the meaning of the due process clause") (emphasis added); *Landau Haus Co. v. Mayor Rory Hoskins*, No. 21-cv-4490, 2023 WL 2745151, at *3 (N.D. Ill. Mar. 31, 2023), (noting that under Illinois law, a person "does not have a property right in obtaining a liquor license in the first instance"). The Complaint concedes, however, that Plaintiffs never obtained a business license for Mary Jane Sweet Spot. [17] ¶ 29.

Second, unlike Plaintiffs here, the plaintiffs in *Club Misty* and *Reed* were entitled to license renewal as a "matter of course" if they met certain "undemanding" criteria. It is upon that basis that the court recognized a property right. *See Club Misty*, 208 F.3d at 619. Plaintiffs enjoy no similar entitlement to a business license. And they allege no other facts from which this Court can infer the existence of a property interest. Accordingly, Plaintiffs' substantive due process claim fails.

## B. Alleged Deprivation of Due Process

Having found no property interest, Plaintiffs cannot maintain a substantive due process claim. Nevertheless, even if this Court were to find a property interest in the business license for Mary Jane Sweet Spot, the Complaint still fails to plausibly plead a substantive due process violation.

Plaintiffs' substantive due process claim is based upon alleged arbitrary government conduct. Specifically, the Complaint alleges that Defendants' ordering of law enforcement to the private pre-opening gathering was "completely arbitrary" and "discriminatory." *See* [17] ¶ 52–53.

The Supreme Court has "repeatedly cautioned against expanding the contours of substantive due process." *Catinella v. Cty. of Cook*, 881 F.3d 514, 518 (7th Cir. 2018) (citing *Lewis*, 523 U.S. at 842). To state a plausible substantive due process claim, Plaintiffs must allege that the government entity abused its power in a manner "so arbitrary and oppressive that it shocks the conscience." *Catinella*, 881 F.3d at 519 (quoting *Lewis*, 523 U.S. at 846–47). Only the "most egregious conduct can be said to violate this standard." *Catinella,* 881 F.3d at 519 (quoting *Lewis,* 523 U.S. at 846).

In *Catinella*, the Seventh Circuit recently discussed the Supreme Court's "lodestar" case exemplifying the type of conduct that would rise to the level of a conscience-shocking violation:

> Illegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents—this course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities. They are methods too close to the rack and the screw to permit of constitutional differentiation.

*Catinella*, 881 F.3d at 519 (citing *Rochin v. California*, 342 U.S. 165, 172 (1952)).

Construing all reasonable inferences in Plaintiffs' favor, none of the allegations in the Complaint rise to the level of conscience-shocking. The appearance of law enforcement at a gathering of family and friends, even if for an arbitrary reason, is a far cry from the "most egregious conduct" required to make out a due process violation. Thus, the Complaint fails to plausibly allege a substantive due process claim. Count I is dismissed.

### B. Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment prohibits state action that discriminates based on membership in a protected class or that irrationally targets an individual for discriminatory treatment as a so-called "class of one." *Brunson*, 843 F.3d at 705 (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012)). Plaintiffs allege equal protection claims under both theories. The Court addresses each in turn.

### 1. Count II: Race Discrimination

The Equal Protection Clause prohibits intentional racial discrimination by state and local officials, and a person who is subjected to such discrimination may seek relief under 42 U.S.C. § 1983. *Taylor v. Ways*, 999 F.3d 478, 487 (7th Cir. 2021) (citing *Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996)); *Ratliff v. City of Milwaukee*, 795 F.2d 612, 624 (7th Cir. 1984)); *see also Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 600 U.S. 181, 206 (2023) (quoting *Loving v. Virginia*, 388 U.S. 1, 10 (1967) ("The clear and central

purpose of the Fourteenth Amendment was to eliminate all official state sources of invidious racial discrimination in the States.")). Defendants argue that Count II must be dismissed because "Plaintiff does not allege any particular rule or regulation that classified based on race." [21] at 10. Not so.

Here, Plaintiffs' equal protection claim is predicated upon race discrimination. To state a claim, the Complaint need only plausibly allege that Defendants' actions "had a discriminatory effect" and "were motivated by a discriminatory purpose." *Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001)). At this stage, Plaintiffs are not required to establish anything more. *See Brown v. Budz*, 398 F.3d 904, 916, n.1 (7th Cir. 2005) (quoting *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("Indeed, we have held that an allegation as simple as 'I was turned down a job because of my race' is all a complaint has to say to sufficiently plead race discrimination under the Equal Protection clause.") (internal quotations omitted)); *see also Gibson v. City of Chicago*, No. 29-C-4152, 2020 WL 4349855, at *34 (N.D. Ill. July 29, 2020) (citing *Sow v. Fortville Police Dep't*, 636 F.3d 293, 303 (7th Cir. 2011) (denying motion to dismiss plaintiff's "somewhat conclusory" equal protection claim by relying on notice pleading standard)). And Defendants acknowledge that to maintain a claim, Plaintiffs need not identify a similarly situated comparator. *See* [28] at 6; *see also Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 830 (7th Cir. 2014) (explaining that plaintiffs need not identify comparators in pleadings and often need discovery to identify them).

Here, the Complaint alleges that Plaintiff is an African American woman, and the Defendants arbitrarily denied the business license for Mary Jane Sweet Spot and ordered law enforcement to its pre-opening event to further their efforts to prevent African American businesses, including Plaintiff's, from operating in the City of Blue Island. [17] ¶ 59. The Complaint further alleges that Defendants are "not in the practice of sending police officers to other businesses hosting private gatherings," but did this—after approving the license—to drive out Plaintiffs' business because its owner is African American, and Mary Jane Sweet Spot is an African American business. *Id.* ¶ 48. And afterward, Defendants rejected Plaintiffs' repeated attempts to rectify the situation and pay the fines to obtain the business license. *Id.* ¶ 29. These actions, Plaintiff claims, violated her equal protection rights by "discriminating against her on the basis of race." [17] ¶ 60.[10]

Construing all inferences in Plaintiffs' favor, the Complaint sufficiently alleges an equal protection claim based upon race discrimination. Defendants' motion to dismiss Count II is denied. Plaintiffs' race discrimination claim under the Equal Protection Clause may proceed as against the individual defendants.

### 2. Count III: Class-Of-One Claim

Class-of-one claims are designed to prevent government actors from singling out an individual for arbitrary abuse. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562,

---

[10] The Complaint also alleges Defendants violated Plaintiffs' rights under the Fourteenth Amendment by discriminating against her based on national origin and/or religion, [17] ¶ 60, but the Complaint does not allege that Plaintiff is a member of a protected class for national origin and/or religion. Thus, to the extent that Count II attempts to assert an equal protection claim based upon those protected classes, it is dismissed.

20

564 (2000). The "classic" class-of-one claim involves allegations that "a public official, 'with no conceivable basis for his action other than spite or some other improper motive . . . comes down hard on a hapless private citizen.'" *Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013) (quoting *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005)).

Since the Seventh Circuit's decision in *Del Marcelle v. Brown County Corporation*, 680 F.3d 887 (7th Cir. 2012), the elements of a class-of-one claim have remained unsettled. *Brunson*, 843 F.3d at 706.[11] But even under the "least demanding standard" articulated in *Del Marcelle*, "plaintiffs must allege that state actors lacked a rational basis for singling them out for intentionally discriminatory treatment." *Miller v. City of Monona*, 784 F.3d 113, 1121 (7th Cir. 2015). The Court has explained that "even at the pleadings stage, 'all it takes to defeat a class-of-one claim is a *conceivable* rational basis for the difference in treatment.'" *Id.* (quoting *D.B. v. Kopp,* 725 F.3d 681, 686 (7th Cir. 2013)). Therefore, plaintiffs can "plead themselves out of court" if the Complaint reveals a "potential rational basis" for treating them differently despite any facts alleged which suggest improper motives. *Id.* (citing *Kopp*, 725 F.3d at 686) (affirming dismissal of class-of-one claim when complaint revealed rational basis for treating plaintiff differently

---

[11] In *Del Marcelle*, three separate opinions were produced in a decision affirming the district court's dismissal of the suit. *Del Marcelle v. Brown Cty. Corp.*, 680 F.3d 887 (7th Cir. 2012). The court disagreed about whether a class-of-one plaintiff must demonstrate merely that there is no possible justification or rational basis for the defendant's actions, *id.* at 900 (Easterbrook, C.J., concurring in the judgment), or if the plaintiff must demonstrate a lack of justification *and* also present evidence of hostile intent or animus, *id.* at 889 (Posner, J., plurality opinion), or if the plaintiff must demonstrate an absence of rational basis, which can be satisfied with evidence of animus, *id.* at 913 (Wood, J., dissenting).

notwithstanding facts suggesting officials had potentially improper motives); *Flying J Inc v. City of New Haven,* 549 F.3d 538, 547–48 (7th Cir. 2008) (same).

Class-of-one claimants carry a heavy burden, even at the pleading stage. *See FKFJ, Inc.*, 11 F.4th 588 (citing *Woodruff v. Mason*, 542 F.3d 545, 554 (7th Cir. 2008)).  Here, as in *Miller, Kopp,* and *Flying J*, Plaintiffs have pled themselves out of court, but only to the extent that their class-of-one claim is based upon the denial of the business license itself.  The Complaint reveals that Plaintiffs' business license was denied, at least in part, because her application "contained misinformation about the type of business she intended to run."  [17] ¶ 27.  The denial letter states that Plaintiff "applied for a license to operate as a small bakery" but "the Business is clearly intended to be an event space for events unrelated to baking and featuring entertainment, alcohol, hookah smoking, and the suggestion of marijuana." [17-3].

While Plaintiffs deny that alcohol was served at the October 20, 2021 gathering, [17] ¶ 20, they do not deny that she subsequently advertised a "BYOB" Halloween event with "infused treats, hookah smoking, a DJ, and food."  [17] ¶ 34; [17-3].  Moreover, the letter states, and Plaintiffs do not contest, that the business did not possess an occupancy certificate for the October 21, 2021 gathering.  *Id.* Plaintiffs acknowledge that an administrative hearing officer denied the appeal for these same reasons.  *Id.* ¶ 34.

These undisputed and rational reasons are fatal to Plaintiffs' equal protection class-of-one claim based upon the denial of the business license.  *See Fares Pawn LLC*

*v. Ind. Dep't of Fin. Insits.*, 755 F.3d 839, 845 (7th Cir. 2014) ("If we can come up with a rational basis for the challenged action, that will be the end of the matter—animus or no.").

But the Complaint does not reveal—and Defendants do not allege—a rational basis for the seemingly-random premises check after the business license was approved, which Plaintiffs allege was arbitrary and discriminatory, not a routine practice of the City, and was, in fact, an intimidation tactic to "target African American businesses," including Mary Jane Sweet Spot. *See* [17] ¶¶ 46–47. Accordingly, Plaintiffs' class-of-one equal protection claim may proceed, insofar as it is based on the premises check. Count III is dismissed, however, insofar as it is based on the denial of Plaintiffs' business license alone.

## C. Counts IV and V: Federal Civil Conspiracy

In Counts IV and V, the Complaint alleges that Defendants conspired, in violation of § 1983, to deprive Plaintiffs of their constitutional rights to due process and equal protection under the Fourteenth Amendment.[12]

In § 1983 actions, "conspiracy is not an independent basis of liability." *See Holm v. Vill. Of Coal City*, 345 Fed. App'x 187, 191 (7th Cir. 2009) (noting that a showing of a constitutional violation is needed to recover on a § 1983 claim of

---

[12] In Plaintiffs' brief opposing dismissal, they also contend that the Complaint's allegations state a claim under 18 U.S.C. § 1985(3). Because Plaintiffs' allegations exclusively involve state actors, this claim is duplicative of Plaintiff's § 1983 claims. *See Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009) (noting that because "the function of § 1985(3) is to permit recovery from a private actor who has conspired with state actors," a claim under § 1985 involving only state actors "does not add anything except needless complexity" and is "superfluous" of a § 1983 claim) (citing *Dennis v. Sparks*, 449 U.S. 24 (1980) and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)); *see also Alsherbini v. Vill. Of Worth*, No. 10-cv-6781 (N.D. Ill. 2011) ("noting that it does not matter whether the plaintiff "captioned as a claim under § 1983 or § 1985(3)" because "the analysis is the same.").

conspiracy). Since Plaintiffs' civil conspiracy claim in Count V is based upon their substantive due process claim, Count V is dismissed.

Plaintiffs' conspiracy claim in Count IV, however, remains based upon their Equal Protection claims. Because Plaintiffs' equal protection claims may proceed in part, the Court addresses Count IV below.

### i. Intra-Corporate Conspiracy Doctrine

Defendants first argue that the intra-corporate conspiracy doctrine bars Plaintiffs' conspiracy claims. [21] at 11. Under this doctrine, the agents of a corporation "jointly pursuing its lawful business do not become 'conspirators' when acts within the scope of their employment are said to be discriminatory or retaliatory." *Strauss v. City of Chicago*, 346 F.Supp.3d 1192, 1210 (N.D. Ill. 2018) (citing *Wright v. Illinois Dep't of Children & Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994)).[13]

But the Seventh Circuit has recognized an exception "where corporate employees are shown to have been motivated solely by personal bias." *See Hartman v. Bd. of Trs. Of Cmty. Coll. Dist.* No. 508, 4 F.3d 465, 470 (7th Cir. 1993); *see also Strauss*, 346 F.Supp.3d at 1211 ("Plaintiff is correct that the doctrine does not extend to conspiracies motivated 'solely' by the 'personal bias' of the individual conspirators;

---

[13] Although the Seventh Circuit has only applied the intra-corporate conspiracy doctrine to conspiracy claims brought under 42 U.S.C. § 1985, *see Wright*, 40 F.3d at 1508, most courts in this district have held that the doctrine applies to § 1983 conspiracy claims with the same force. *See e.g., Strauss*, 346 F. Supp. at 1210 (citing *Stenson v. Town of Cicero*, No. 03-cv-6642, 2005 WL 643334, at *7–9 (N.D. Ill. March 15, 2005)).

such conspiracies do not implicate the interests of the conspirators' shared employer, and thus are not undertaken within the scope of their employment.").

Construing all inferences in Plaintiffs' favor, the Complaint sufficiently alleges that Defendants' actions, which form the basis for their equal protection claims, were motivated solely by personal bias (*i.e.,* discrimination). Thus, the Court declines to dismiss Count IV on this basis.

### ii.     Sufficiency of Allegations

Civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (quoting *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988)).

To state a claim for civil conspiracy under § 1983, a plaintiff must allege facts from which the Court may reasonably infer there was: "(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights; and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Hayes v. Bd. of Educ. of City of Chicago*, 629 F.Supp.3d 816, 823 (N.D. Ill. 2022) (quoting *Wheeler v. Piazza*, 364 F.Supp.3d 870, 880 (N.D. Ill. 2019); *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988)).

To survive a motion to dismiss, Plaintiffs' Complaint must assert "factual allegations suggesting that the defendants agreed to violate" their constitutional rights. *Eason v. Raoul*, No. 22-cv-3166, 2023 WL 6174415, at *1 (7th Cir. Sept. 22, 2023) (citing *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009)). Stated differently,

"mere allegations of joint action or a conspiracy . . . are not sufficient to survive a motion to dismiss." *Spiegel v. McClintic*, 916 F.3d 611, 611 (7th Cir. 2019) (quoting *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998)); *see also Cooney*, 583 F.3d at 971 ("Even before *Twombly* and *Iqbal*, a bare allegation of conspiracy was not enough to survive to survive a motion to dismiss for failure to state a claim" and it remained subject to the "judicially-imposed requirement" to plead specific facts under Rule 8.).

Here, the Complaint alleges nothing more than bare conclusions that Defendants conspired to violate Plaintiffs' civil rights. Plaintiffs aver that Defendants "reached an understanding or agreement, carried out by the police, to engage in the course of conduct, and otherwise jointly acted and/or conspired among themselves to deprive Plaintiff of her federally protected right to equal protection." [17] ¶ 70.

But Plaintiffs fail to plausibly allege any factual content to support this alleged "meeting of the minds": who was involved, when they agreed, or even what they agreed upon. *See Dyson*, 306 F.Supp.3d at 1047 (dismissing conspiracy where complaint contained "not a whiff of conspiratorial agreement" between the individual defendants beyond unsupported conclusions). At a minimum, Plaintiffs must allege "the parties, the general purpose, and the approximate date of the conspiracy" to avoid dismissal. *Loubser v. Thacker*, 440 F.3d 439, 444 (7th Cir. 2006) (citing *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002)); *see also Evers v. Reak,* 21 Fed. App'x 447, 450 (7th Cir. 2001) ("Vague and conclusory allegations of the existence of

a conspiracy are not enough to sustain a plaintiff's burden."). Plaintiffs have failed to do so. Accordingly, Count IV is also dismissed.

### D. Count VIII: State Law Conspiracy

For the same reasons, Plaintiffs' state law conspiracy claim also fails. To state a claim for civil conspiracy under Illinois law, a plaintiff must plausibly allege an agreement and at least one tortious act committed in furtherance of that agreement. *Turner v. Hirschbach Motor Lines*, 854 F.3d 926, 930 (7th Cir. 2017) (citing *McClure v. Owens Corning Fiberglas Corp.,* 720 N.E.2d 242, 258 (Ill. 1999)).

In short, Plaintiff has pled no facts from which this Court can reasonably infer the existence of a conspiracy to violate Plaintiffs' civil rights. An agreement is a "necessary and important element of this cause of action." *Turner*, 854 F.3d at 930 (citing *Adrock v. Brakegate Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994) (internal quotations omitted)). The bare conclusions contained in the Complaint are not enough to "raise a right to relief above the speculative level." *See Roehl v. Merrilees*, No. 11-cv-4886, 2012 WL 1192093, at *8 (N.D. Ill. Apr. 10, 2012) (quoting *Twombly*, 550 U.S. at 555) (dismissing § 1983 conspiracy claim for failure to allege facts upon which express or implied agreement could be inferred beyond speculative level). Therefore, Count VIII is dismissed.

### E. Count VI: Discrimination in Formation and Execution of a Contract

In Count VI, Plaintiffs bring a claim for discrimination in the formation and execution of a contract under 42 U.S.C. § 1981. Section 1981 guarantees all citizens regardless of race, "the same right" to make and enforce contracts. 42 U.S.C. § 1981.

27

The term "'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

As a preliminary matter, this Court notes that municipalities may only be liable under § 1981 on the theory that the municipality's "official policy or custom was discriminatory." *See Smith v. Chicago Sch. Reform Bd. of Trs.*, 165 F.3d 1142, 1148 (7th Cir. 1999) (holding that *Monell* applies to § 1981 suits). As explained above, the Complaint fails to plausibly allege municipal liability against the City under *Monell*. Therefore, Plaintiffs' § 1981 claim against the City is dismissed.

As for the individual defendants, while § 1981 does not provide remedies against state actors*,* its prohibitions are "enforceable against state actors through § 1983." *See Phillips v. Baxter*, 768 Fed. App'x 555, 559 (7th Cir. 2019) (citing *Campbell v. Forest Pres. Dist. Of Cook Cty.*, 752 F.3d 665, 671 (7th Cir. 2014); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989)). Thus, this Court must examine whether the substance of Plaintiffs' allegations adds up to a plausible claim that the Defendants discriminated against Plaintiffs in their right to make and enforce contracts. *See Phillips*, 768 Fed. App'x at 559.

As to a race discrimination claim under § 1981, Plaintiff must allege that: (1) she is a member of a racial minority; (2) the defendant intended to discriminate against her on the basis of race; and (3) the alleged discrimination relates to the making and forming of a contract. *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). Additionally, "proof of a contractual relationship is necessary to establish

28

a § 1981 claim." *Walker v. Abbott Labs*, 340 F.3d 471, 476 (7th Cir. 2003); *see also Domino's Pizza, Inc. v. Mc Donald*, 549 U.S. 470, 476, 480 (2006) ("Any § 1981 plaintiff must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights."). The Seventh Circuit has explained that a claim for interference with the right to make and enforce a contract must allege the actual loss of a contract interest, not merely the possible loss of future contract opportunities. *Morris*, 89 F.3d at 413.

Here, the Complaint alleges that Plaintiff, an African American woman, is a racial minority, [17] ¶ 14, and that Defendants discriminated against Plaintiff and her business based upon race by denying her business license and arbitrarily ordering law enforcement to her pre-opening gathering. *Id.* ¶¶ 78, 59, 48, 60. It also alleges that Defendants "unlawfully interfered with the formation of its contract with Plaintiffs" by "denying the business license of Mary Jane Sweet Spot." [17] ¶¶ 76–77. Besides the potential award of a business license, the Complaint alleges no other basis for a contractual relationship. Thus, Plaintiffs' claim hinges on whether the alleged discrimination relates to the making and forming of a contract, *i.e.,* whether the business license sought for Mary Jane Sweet Spot can qualify as a "contract" for 1981 purposes.

Defendants say no, [21] at 17, and the Court agrees. In *Walker v. Abbott Labs*, the Seventh Circuit stated that "§ 1981's statutory language reveals no intent by Congress to give the word 'contract' in § 1981 any specialized meaning; thus, we must assume that the ordinary meaning was intended." 340 F.3d 471, 476 (7th Cir. 2003);

*see also Adam v. Obama for Am.*, 210 F.Supp.3d 979, 985 (N.D. Ill. 2016) (applying ordinary meaning of "contract" to plaintiff's § 1981 race discrimination claim).

In *Walker*, the court turned to the Second Restatement of Contracts which defines a contract as "a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." (quoting Restatement (Second) of Contracts § 1 (1981)). The Restatement further defines "'formation of a contract—with exceptions not relevant here—as not simply as "agreement . . . of mutual assent,' but a special kind of agreement consisting of a 'bargain . . . to exchange promises or to exchange a promise for a performance or to exchange performances.'" *Adam*, 210 F.Supp.3d at 985 (quoting Restatement (Second) Of Contracts § 3, 17)).

Applying these controlling principles to the Complaint's allegations, the Court cannot find that the disputed business license from the City of Blue Island constitutes a contract, or that the award of the business license Plaintiffs sought would have resulted in a contractual relationship between the business and municipality for purposes of § 1981. Unlike a contract, a business license does not result from a bargain to "exchange promises or to exchange a promise for a performance or to exchange performances." Restatement (Second) of Contracts § 3, 17 (1981). Rather, in this instance, the business license is a grant of revocable permission from the City to an individual to conduct business, not a bargained-for benefit. *See* [17-1] at 4.

For similar reasons, other courts have concluded the same. *See, e.g., Carbondale v. Wade*, 106 Ill. App. 654 (Ill. App. Ct. 1902) ("In both the legal and

popular sense, the term license implies no right or estate conveyed, or ceded, no binding contract between parties, but mere leave to be enjoyed as matter of indulgence at the will of the party who gives the license. A license authorizing a person to retail spirituous and intoxicating liquors, does not create any contract between him and the government. Such a license is revocable under the police power of the state."); *Kennedy v. Hughes*, 596 F. Supp. 1487, 1495 (D. Del. 1984) ("Absent clear, unequivocal language to the contrary, an ordinary business license is not considered to be a contract between a government and private parties.").

Plaintiffs have therefore failed to state a claim under § 1981, since the alleged discrimination did not relate to "the making and executing of a contract." *Morris,* 89 F.3d at 413; *see Domino's Pizza*, 549 U.S. at 480 (noting that liability under § 1981 is predicated upon an existing or proposed contract).

### F. Count VII: Tortious Interference with Business Expectancy

#### 1. Sufficiency of Allegations

Count VII of the Complaint asserts a claim for tortious interference with business expectancy.[14] To state a tortious interference claim under Illinois law, Plaintiffs must allege that: "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting

---

[14] *See Allstate Ins. Co. v. Ameriprise Fin. Servs.*, No. 17-cv-5826, 2023 WL 5334638, at *31 (N.D. Ill. Aug. 18, 2023) (quoting *Pampered Chef v. Alexanian*, 804 F. Supp. 2d 765, 807 n.30 (N.D. Ill. 2011) ("In Illinois, the terms tortious interference with prospective economic advantage, business expectancy, and business relations are interchangeable.")).

from the defendant's interference." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685–86 (7th Cir. 2014) (quoting *Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1133-34 (Ill. 2001)).

Defendants first argue that Plaintiffs' tortious interference claim must fail because Plaintiffs "cannot plead or prove the elements required for a tortious interference claim without a contract." [21] at 17. This would be true, if the Complaint alleged a tortious interference with contract claim; it does not.

Rather, the Complaint raises a claim for tortious interference with prospective business expectancy under Illinois law, which does not require a contract. *See Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 893 N.E.2d 981, 993 (Ill. App. Ct. 2008) (citing *Lusher v. Becker Brothers, Inc.*, 509 N.E.2d 444 (Ill. App. Ct. 1987) ("A cause for intentional interference with a business expectancy need not be based be on an enforceable contract that is interfered with; rather, it is the interference with the relationship that creates the actionable tort.")).

Plaintiffs' tortious interference claim, however, fails for another reason. It is well established that the tortious interference allegedly committed by the defendants "must be directed toward the third party or parties with whom the plaintiff had the business expectancy." *Hickory Hills Foodmart, Inc. v. Equilon Enterprises, LLC*, No. 22-cv-5393, 2023 WL 4273664, at *6 (N.D. Ill. June 29, 2023) (citing *Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*, 451 F.Supp.2d 982, 992 (N.D. Ill. 2006)); *McCoy*, 760 F.3d at 686 ("Actions that form the basis of a tortious interference claim must be directed at third-party business prospects.").

Relevant here, it is not enough for the interfering action to indirectly affect the third parties; the action must be "directed in the first instance at the third party." *House of Brides, Inc. v. Alfred Angelo, Inc.*, No. 11-cv-7834, 2014 WL 64657, at *10 (N.D. Ill. Jan. 8, 2014) (quoting *Schuler v. Abbott Lab.,* 265 Ill. App. 3d 991, 995, 639 N.E.2d 144, 148 (Ill. App. Ct. 1993)). Therefore, to state a claim, Plaintiffs must allege that Defendants "directly communicated with or acted towards the prospective clients or customers." *OTR Transp., Inc. v. Data Interfuse LLC*, No. 21-cv-3415, 2023 WL 199353, at *5 (N.D. Ill. Jan. 17, 2023) (citing *Logan Graphic Prod., Inc. v. Textus USA, Inc.*, 2002 WL 31507174, at *1 (N.D. Ill. Nov. 8, 2002) (denying motion to dismiss tortious interference claims because plaintiff alleged that defendant communicated with prospective "retailers and distributors" of a product the plaintiff planned to sell)); *Kozlowski v. Greenridge Farm, Inc.*, 338 F.Supp.3d 828, 840–41 (N.D. Ill. 2018) (denying motion to dismiss tortious interference claims because plaintiff alleged that defendant told plaintiff's customers that plaintiff had discriminated against her based on her pregnancy)).

The Complaint identifies two purported actions of interference: (1) the denial of Plaintiffs' business license; and (2) the dispatch of police officers to Plaintiffs' private gathering (which resulted in tickets). [17] ¶ 84. The denial of Plaintiffs' business license was, of course, not directed toward Plaintiffs' patrons; that decision was directed toward Plaintiffs and Plaintiffs alone. As for the premises check, the Complaint alleges that the October 20, 2021 event was a "gathering of family and friends." [17] ¶ 21. Regarding its impact upon future patrons, the Complaint alleges

that the police presence created a "negative presence in the community" which "detrimentally affected her business. *Id.* ¶ 46–47.

But it is not enough for Plaintiffs to allege that "the defendant's action diminished the plaintiff's reputation or ability to provide some service to its clients, thereby causing the plaintiff to lose customers." *OTD Transp.*, 2023 WL 199353, at *5. Courts have dismissed similar claims on this basis. *See id.* (collecting cases). Instead, to maintain a tortious interference action, the interfering actions must have been principally directed toward Plaintiffs' patrons, not the Plaintiffs. *See, e.g., Int'l Star*, 451 F.Supp.2d at 992 (finding that plaintiff's assertion that defendant's actions "affected" its customers was insufficient to maintain a tortious interference claim because defendant's actions were not "directed toward" plaintiff).

Here, Plaintiffs only cite actions directed at Plaintiffs and their business, which they allege had an incidental, negative impact on their business interests. *See* [17] ¶¶ 20–21, 85. These allegations are insufficient to state a tortious interference claim. Therefore, Count VII is dismissed.

### 2. Tort Immunity Act

Even if the Complaint sufficiently pled a tortious interference claim, Defendants argue the Illinois Local Government and Government Employees Tort Immunity Act, 745 Ill. Comp. Stat. Ann. 10/1–101 et seq. ("Tort Immunity Act" or "Act") immunizes them from tortious interference actions based upon the denial of the business license. [21] at 19.[15] Defendants argue that the denial of Plaintiffs'

---

[15] Defendants do not argue that they are immune from liability for any other actions under the Tort Immunity Act. *See* [21] 19–20.

business license falls within the "operations of government" protected by the Act. [21] at 19. Plaintiffs do not generally dispute that the Tort Immunity Act applies to Plaintiffs' claims. *See* [24] at 14–15. Instead, Plaintiffs argue that Defendants' conduct falls within the "willful and wanton" exception to the Tort Immunity Act, 745 Ill. Comp. Stat. Ann. 10/2-208.

The Court agrees with Defendants. Section 2-104 of the Tort Immunity Act immunizes local public entities from liability for injuries "caused by the issuance, denial, suspension, or revocation of, or by the failure or refusal to issue, deny, suspend, or revoke, any permit, [or] license." 745 Ill. Comp. Stat. Ann. 10/1–104. Section 2-206 of the Act similarly immunizes public employees from liability for injury "caused by his issuance, denial, suspension or revocation of, or by his failure to refusal to issue, deny, suspend, or revoke, any permit, [or] license." 745 Ill. Comp. Stat. Ann. 10/2–206. The immunity provided in sections 2–104 and 2–206 of the Act is absolute; there is no willful and wanted exception to this provision. *FKFJ, Inc. v. Vill. Of Worth*, No. 18-C-2828, 2019 WL 277723, at *4 (N.D. Ill. Jan. 22, 2019).

Therefore, Plaintiffs tortious interference claims are also barred by the Tort Immunity Act to the extent that they depend upon the denial or failure to issue Plaintiffs' business license. Count VII is dismissed.

### G. Count IX: *Respondeat Superior* Claim

Count IX of the Complaint asserts liability against the City under *respondeat superior*. [17] ¶ 91. Because municipalities may not be held liable under § 1983 on a *respondeat superior* theory, *see Milestone v. City of Monroe, Wisconsin*, 665 F.3d

774, 780 (7th Cir. 2011), this claim is limited to Plaintiffs' state law claims. None of Plaintiffs' state law claims may proceed; thus, the Court dismisses Plaintiffs' *respondeat superior* claim. Defendants' motion to dismiss with respect to Count IX is granted.

## IV. Conclusion

For the reasons explained above, the Court grants in part, and denies in part, Defendants' motion to dismiss [21] without prejudice. Plaintiffs may amend Count I and Counts III–IX if Plaintiffs can, in good faith and consistent with Rule 11, set forth factual allegations sufficient to state a claim for this count consistent with this Court's ruling and relevant law. Plaintiffs shall file an amended complaint on or before April 19, 2024. If Plaintiffs fail to file an amended complaint by this date, the case will be dismissed.


Dated: March 29, 2024                    Entered:


                                         John Robert Blakey
                                         United States District Judge

36